No. 46,771

John P. Jennings, Lucile Jennings Gille, and Laura Jennings Houseworth, Individually and as Trustees, and Lucile Pollock Jennings, *Appellees*, v. Mae N. Jennings, *Appellant*, and The National Investment Company, Inc., *Defendant*.

(507 P. 2d 241)

Opinion filed March 3, 1973.

*J. D. Lysaught,* of Weeks, Thomas, Lysaught, Bingham & Johnston, Chartered, of Kansas City, argued the cause, and *David K. Fromme,* of the same firm, was with him on the brief for the appellant.

*John F. Steineger,* of Steineger & Reid, of Kansas City, and *Howard A. Crawford,* of Lathrop, Koontz, Righter, Clagett, Parker & Norquist, of Kansas City, Missouri, argued the cause, and *William K. Waugh, III,* of Lathrop, Koontz, Righter, Clagett, Parker & Norquist, of Kansas City, Missouri, was with them on the brief for the appellees.

The opinion of the court was delivered by

Owsley, J.: This is an appeal from summary judgment in favor of plaintiffs. The trial court found an agreement dated July 7, 1943, created a valid and enforceable trust on all the issued and outstanding stock of the National Investment Company and required the defendant, Mae N. Jennings, to transfer and deliver to to the plaintiffs, John P. Jennings, Lucille Jennings Gille, and Laura Jennings Houseworth, as trustees, all shares of stock in said corporation in her name individually and as joint tenant with A. H. Jennings, Jr., her deceased husband who had in his lifetime as trustee assigned to her said stock in violation of the terms of the trust. The appeal questions the trial court's construction of the 1943 agreement and the failure of the trial court to find the action was barred by the statute of limitations.

Each member of the family is a party to this action except those shown as deceased in the following diagram of the family tree of the Jennings family:

| A. H. Jennings, Sr. (died 1932) | Laura S. Jennings (died 1930) |

Frank H. Jennings (died 2/19/53) Lucile Pollock Jennings Married in 1917

A. H. (Harry) Jennings, Jr. (died 6/12/69) Mae N. Jennings Married June 13, 1946

John P. Jennings
Lucile Jennings Gille
Laura Jennings Houseworth

On July 7, 1943, A. H. Jennings, Jr., Frank H. Jennings and Lucile Pollock Jennings executed an agreement which in part provided:

"A. H. Jennings, Jr. and Frank H. Jennings are brothers. In 1923 the parties hereto, together with Mary E. Jennings, the wife of A. H. Jennings, Jr., and A. H. Jennings, Sr. and Laura S. Jennings, his wife, and father and mother of A. H. Jennings, Jr. and Frank H. Jennings, organized The National Investment Company, a corporation, which was organized and is existing under and by virtue of the laws of the State of Kansas.

. . . . . . . . . . . . .

"The corporation was organized principally for the purpose of consolidating and managing real estate then owned by the above named father and sons as individuals, and for the purpose of acquiring, holding and developing additional real estate, and it was the desire and intention of the incorporators that the ownership of the stock of the corporation should, insofar as possible, be and remain in the Jennings family.

. . . . . . . . . . . . .

"At the present time the stock of such corporation is owned as follows:
"A. H. Jennings, Jr., 500 shares (One share of which has been issued to Thomas M. Van Cleave to qualify him as a director of the corporation);
"Frank H. Jennings 467 shares;
"Lucile Pollock Jennings 33 shares.
"The primary reason for the making of this agreement is to carry out the purpose and intent of the incorporators of said corporation that the ownership of the stock of said corporation should remain in members of the Jennings family who are direct blood descendants of A. H. Jennings, Sr. and Laura S. Jennings.

"It is therefore, agreed by the parties as follows:

"1.  Lucile Pollock Jennings hereby agrees to and does endorse and transfer 32 of the 33 shares of stock now owned by her to Frank H. Jennings, her husband, thereby making A. H. Jennings, Jr., and Frank H. Jennings, brothers, equal owners of all the stock of the corporation less two qualifying shares, one of which is outstanding in the name of Thomas M. Van Cleave, and the other being retained by and outstanding in Lucile Pollock Jennings.

. . . . . . . . . . . . .

"3.  Should either A. H. Jennings, Jr., or Frank H. Jennings die leaving a widow but no children surviving and be survived by the other, the title to and ownership of all the stock of said corporation owned by the one so dying shall immediately vest in the survivor of them, but the widow of the one so dying shall be entitled to and shall receive so long as she lives and remains unmarried, but no longer, the same amount of annual income from such corporation as the survivor of them, or his heirs, receives and is paid either in the form of salary or dividends.

"4.  Should either A. H. Jennings, Jr., or Frank H. Jennings die and be survived by a child or children of his own blood and by the other, the title to and ownership of the stock of the corporation of the one so dying shall vest in his child or children.  But if the party so dying leave a widow, such child or children shall receive no income from such stock as long as such widow lives and remains unmarried, but such widow during such period shall receive the same amount of annual income as the survivor of them receives from such corporation either in the form of salary or dividends.  On the death or remarriage of such widow the child or children owning such stock shall receive and be paid the same annual income as the survivor of A. H. Jennings, Jr., or Frank H. Jennings, but such survivor shall have and keep control and management of such corporation without interference from either the widow or child or children of the one first dying.

"5.  Should A. H. Jennings, Jr. or Frank H. Jennings die leaving a child or children of his own blood surviving him, and should the survivor then die without leaving any child or children of his own blood surviving him, the title to and ownership of the stock of said corporation owned by the survivor shall then vest in the child or children of the one who first died, so that such child or children shall then become and be vested with complete ownership of all the stock of such corporation; provided, that if the survivor of them is survived by a widow, such widow shall, so long as she lives and remains unmarried, receive and be paid the same amount of annual income of such corporation as is received and paid to the widow or children of the one who died first.  But if such survivor of them is not survived by a widow, or should such widow die or remarry, and the widow of the one who died first be then living and not remarried, then the widow of the one who first died shall, so long as she lives and remains unmarried, receive all the income from such corporation.

. . . . . . . . . . . . .

"8.  In order to effectuate and carry out the terms of this agreement, the parties have this day endorsed in blank the respective certificates of stock issued by said corporation and evidencing their respective ownership of the stock of such corporation, as hereinbefore stated, and have placed such certificates in

safe deposit box No. 592 in The Commercial National Bank of Kansas City, Kansas, with joint access and control in A. H. Jennings, Jr. and Frank H. Jennings, parties hereto."

After execution of the agreement the following events transpired:

June 13, 1946—A. H. Jennings, Jr., married Mae N. Jennings, defendant and appellant herein. Both had substantial property, but there was no antenuptial or postnuptial agreement between them.

Sept. 24, 1949—Frank H. Jennings executed a will which made no reference to the agreement.

Feb. 19, 1953—Frank H. Jennings died. Following his death, A. H. Jennings, Jr., continued to manage the affairs of National Investment Company without any interference from heirs of the deceased, and income from the deceased's National Investment stock was paid to his widow.

Oct. 19, 1953—Accountants for executrix requested legal opinion as to the effect of the agreement upon the Frank H. Jennings estate. The opinion stated the agreement was valid and could be enforced by any interested party. It also answered several questions as to tax benefits in alternative situations and recommended that Lucile Pollock Jennings petition the probate court to impress a trust upon all the stock to carry out the terms of the agreement.

May 29, 1957—A. H. Jennings, Jr., issued a certificate of stock transferring 220 shares of stock to Mae N. Jennings.

Aug. 8, 1957—A. H. Jennings, Jr., wrote to plaintiffs, disavowing the validity of the 1943 agreement. After consultation with his nephew, John P. Jennings, and Thomas Van Cleave, Sr., author of the agreement, A. H. Jennings, Jr., was convinced he could not disavow the agreement.

Aug. 19, 1957—A. H. Jennings, Jr., wrote a letter retracting his statements and recognizing the validity of the 1943 agreement.

Feb. 10, 1964—The 1963 annual report of National Investment Company was filed with the secretary of state showing Mae N. Jennings as owner of 220 shares of stock.

Aug. or Sept., 1964—A. H. Jennings, Jr., talked to Lucile Jennings Gille and suggested the assets of the company be distributed. He wanted one building for himself and the others could divide the rest any way they wanted. The other children of Frank H. and Lucille Pollock Jennings did not respond.

Oct. 10, 1964—A. H. Jennings, Jr., transferred 280 shares to him-

self and his wife, Mae, as joint tenants with right of survivorship.

June 12, 1969—A. H. Jennings, Jr., died. No claim upon his estate was made by plaintiffs.

Oct. 13, 1969—Plaintiffs filed action asking court to enjoin defendant from transferring or alienating shares of National Investment Company stock in her possession to impress upon all stock a trust, declaring plaintiffs trustees with equal life estates in the income from all stock, and ownership of all stock in plaintiffs upon the death of Lucile Pollock Jennings and Mae N. Jennings.

Other facts will be referred to in connection with development of the issues in this action.

This case was submitted to the trial court on the pleadings, depositions, and other written and documentary evidence. The parties agreed there was no genuine issue as to any material fact. In these circumstances we may decide the established facts as we would in an original action. (*Northern Natural Gas Co. v. Dwyer*, 208 Kan. 337, 492 P. 2d 147.)

Defendant first contends the agreement of 1943 did not create an express trust or a trust implied in fact. We identify a trust arising out of a written agreement as an express trust even though the language of a written agreement is sometimes construed as creating a trust by implication. In *Sears v. First Fed. Sav. and Loan Assoc.*, 1 Ill. App. 3d 621, 275 N. E. 2d 300, the court stated:

"All trusts of every kind are necessarily included within these two general classifications of express and implied. Although the term, 'implied trust' has been used to designate an express trust arising from the construction of language in a document, it seems to us that it is preferable to define the trust which would arise in such situations as an express trust. . . . See: *Bogert, Trusts and Trustees* (2nd ed. 1964), § 451." (p. 627.)

In seeking principles and guidelines to which we can subject the 1943 agreement we find no better authority than the opinion of this court in *Shumway v. Shumway*, 141 Kan. 835, 44 P. 2d 247. It was stated therein that from the standpoint of parties, an express trust implies a cooperation of three persons: (1) A settlor, or a person who creates or establishes a trust; (2) a trustee, or person who takes and holds legal title to the trust property for the benefit of another; and (3) a *cestui que trust*, or the person for whose benefit a trust is created.

Applied to the facts in this case the three persons are easily defined. It follows that A. H. Jennings, Jr., Frank H. Jennings, and Lucile Pollock Jennings, having signed the written document of

1943, became the settlors of the trust. The trustees were Frank H. Jennings and A. H. Jennings, Jr., or their survivor. The *cestui que trust* are the widows of Frank H. Jennings and A. H. Jennings, Jr., and Frank's three children, John P. Jennings, Lucile Jennings Gille, and Laura Jennings Houseworth.

*Shumway* established three requisite features necessary to create a trust: (1) An explicit declaration and intention to create a trust; (2) the transfer of lawful and definite property made by a person capable of making a transfer thereof; and (3) a requirement to hold as trustee for benefit of a *cestui que trust* with directions as to the manner in which the trust funds are to be applied.

In applying the three necessary features of a trust to this trust agreement we find the three owners of all the stock in the National Investment Company, for the purpose of retaining the stock of said corporation in the members of the Jennings family, assigned all of said stock to Frank H. Jennings and A. H. Jennings, Jr., as trustees, with specific directions to hold said stock for the benefit of themselves, their widows, and their children. We are satisfied that each of the requisite features of a trust as set forth in *Shumway* has been fulfilled in the 1943 agreement and we hold that an express trust was firmly established.

Defendant questions that a trust was created because the instrument did not contain the words "trustee", "trust", "beneficiary", or any equivalent thereof. In *Springer v. Litsey*, 185 Kan. 531, 345 P. 2d 669, the court construed an agreement to be a trust which failed to use the words usually employed in a trust instrument and stated:

". . . Whatever may be the inaccuracy of expression or the inaptness of the words used in an instrument in a legal view, if the intention of the parties can be clearly discovered, the court will give effect to it and will liberally construe the words accordingly. . . ." (p. 535.)

To the same effect is the following from Bogert, Trusts and Trustees, § 45, (2nd ed. 1964), pp. 312-316, where it was said:

"Proof of the use of formal or technical language is not a prerequisite. All that is necessary is that the settlor express an intent that the trustee shall have the functions and duties which are incident to trusteeship. Thus, in some cases there has been a finding of the expression by the settlor of an intent to have a trust, even though he used language seemingly appropriate to an absolute gift, to the creation of a life tenancy, to the assignment of a chose in action, to the creation of an interest on condition subsequent, to the making of a contract, or to executorship, agency, guardianship, or partnership, and did not use the words 'trust' or 'trustee'. . . ."

Defendant also contends there was no actual transfer of definite property to a trustee, since Lucile Pollock Jennings transferred her shares to her husband, Frank H. Jennings; and that Frank H. Jennings and A. H. Jennings, Jr., did not transfer their shares of stock to anyone, but merely endorsed them in blank and placed them in a safety deposit box under the control of both Frank H. Jennings and A. H. Jennings, Jr. We do not agree that the failure to transfer property to a named trustee prevents a trust relationship. It is sufficient if the transfer places the property under the control of named persons who are determined to be trustees by a reasonable construction of the agreement.

Defendant argues the 1943 agreement contemplated the stock in the National Investment Company was to be held individually by the respective owners. We recognize that for the purpose of distributing the income of the investment company the ownership was determinative. This is not inconsistent with the status of the stock as trust assets. Each of the trustees (Frank H. Jennings and A. H. Jennings, Jr.) remained charged in accord with directions and instructions set forth in the agreement. Defendant further states since the agreement provided only the stock of the brother first to die would pass in a certain manner, the remaining brother would merely keep the stock he previously owned without interference of a trust. This argument is not effective in that it overlooks the fact the shares of stock of each of the brothers were part of the trust assets charged with trust directions.

Defendant further argues plaintiffs are estopped to contend the 1943 agreement created a trust; that the trust, if any, terminated prior to transfer to her because there was a merger or the trust was passive; that the agreement constituted an invalid attempted testamentary disposition of property; that the agreement did not divest the parties of power to dispose of their stock prior to their respective deaths; and that the agreement constituted an unreasonable restraint on alienation. Our conclusion that a valid and binding trust was created by the 1943 agreement is a basic answer to each of defendant's contentions.

Defendant contends plaintiffs' cause of action was barred by the statute of limitations. She argues the breach of contract rule should be applied to the facts in this case; i. e., the cause of action accrues on breach, irrespective of knowledge of plaintiffs that the breach occurred. Since the breach occurred when A. H. Jennings, Jr.,

transferred the two blocks of stock to Mae N. Jennings, the five-year statute of limitations on agreements in writing (K. S. A. 60-511), has expired. Recognizing we might construe the 1943 agreement to be a trust, defendant claims the transfer of the stock resulted in a repudiation of the trust. She then argues a cause of action accrues on repudiation of a trust agreement and is likewise barred by K. S. A. 60-513. Defendant further contends plaintiffs are not entitled to the advantages of K. S. A. 60-513 (two-year limitation after discovery of fraud) in that the basis of the action is repudiation of a trust, not fraud. Even though the amended petition used the word "fraudulently" in describing the acts of A. H. Jennings, Jr., she argues plaintiffs should not be permitted to insert fraud into this action when the basis of their cause of action is repudiation of a trust agreement, citing *State, ex rel., v. McKay,* 140 Kan. 276, 36 P. 2d 327.

Since we have firmly concluded the 1943 agreement created a trust and the relationship between A. H. Jennings, Jr., and the plaintiffs was that of trustee and beneficiaries, we must apply the statute of limitations in that context. Defendant argues there is a distinction between breach of a trust and repudiation of a trust. While this contention might be true, it has no significance in this action as it affects the statute of limitations. The cause of action is based on the acts of A. H. Jennings, Jr., in transferring the stock to Mae N. Jennings. Whether such an act constituted a breach or a repudiation of the trust agreement is immaterial in determining when a cause of action accrued.

It is plaintiffs' position that their cause of action did not accrue until they had knowledge of the repudiation of the trust agreement and this did not occur until after the death of A. H. Jennings, Jr. Plaintiffs' petition was filed about four months after his death. We find support for plaintiffs' position in the following cases:

*Cooley v. Gilliam.,* 80 Kan. 278, 102 Pac. 1091:

". . . Ordinarily the period of time limited for the commencement of an action against a trustee does not begin until he repudiates the trust or denies his liability, and it should appear that the beneficiary had, or ought to have had, knowledge of such repudiation or denial before the statutory period begins to run. . . ." (p. 285.)

*Flitch v. Boyle,* 147 Kan. 600, 78 P. 2d 9:

"Between the parties to such a contract the statute of limitations would not begin to run until some breach of trust or of other fiduciary duty owed by one of the joint adventurers to the other had been committed, nor until the latter

had been apprised of it or of facts which prudently should have put him on inquiry. . . ." (p. 602, 603.)

*Staab v. Staab*, 158 Kan. 69, 145 P. 2d 447:

". . . In this case the first wrongful act or known breach of trust by the trustee was their repudiation of the trust on July 11, 1941, the date the beneficiaries demanded settlement under the trust agreement. In passing we pause to note that appellant's contention the cause of action arose in 1931, that is, on the date of the execution and delivery of the deed to them, is entirely unsound. The father lived until May, 1937. Manifestly, during his lifetime appellees had no interest in his property which they could assert against the trust he had created. Thereafter appellants recognized the trust and lulled appellees into a sense of confidence and security until the confidence reposed was breached. Equity and good conscience will not permit appellants to now take advantage of a delay in filing suit occasioned by their own wrongdoing and that is true whether the wrong consisted in a breach of trust formerly recognized or in actual fraud and its successful concealment." (p. 75.)

We are not impressed by the argument of defendant that this cause of action does not sound in fraud. True, the plaintiffs did not use the word "fraudulent" until the amended petition was filed; however, a trustee who breaches or repudiates a trust agreement commits an act which necessarily encompasses fraud. To determine whether the plaintiffs discovered or should have discovered the fraudulent acts of A. H. Jennings, Jr., more than two years prior to the filing of this action requires an examination of the record.

Defendant contends plaintiffs cannot avoid the running of the statute by claiming ignorance of the facts when on reasonable diligent investigation the facts were discoverable. We believe defendant's contention should be tempered to the extent that a beneficiary of a trust is not charged with the duty to investigate the action of the trustee until such facts as would prompt a normally alert person to make further inquiry are known to him. Defendant points out facts known to plaintiffs and argues therefrom that plaintiffs were obligated to inquire and investigate acts of the trustee. We have considered the able argument of defendant, but we believe the whole of the record justifies a conclusion that plaintiffs did not have knowledge or information which would arouse suspicion or alert them to wrongdoing on the part of the trustee. The plaintiff, Lucile Pollock Jennings, was to receive from the corporation benefits her husband would have received during his lifetime. She received these benefits and the fact they were paid by corporation check rather than a check from the trustee could not alert her to believe the trust was not being properly administered.

The other plaintiffs, also beneficiaries under the trust, had no benefits accruing to them until after the death of their mother, Lucile Pollock Jennings.

We should also note that as far as plaintiffs knew, A. H. Jennings, Jr., after the death of his brother, Frank, continued to manage and control the National Investment Company pursuant to terms and conditions of the agreement. In fact, under date of August 19, 1957, he wrote a letter to all the plaintiffs wherein he stated: ". . . I have and do recognize the existence and validity of the contract referred to of July 7, 1943. . . ." It is interesting to note this letter was written after A. H. Jennings, Jr., had transferred 220 shares of stock to Mae N. Jennings under date of May 29, 1957. The payment of all of the deceased's benefits to Lucile Pollock Jennings could only be made pursuant to the agreement; hence, it was a recognition of the agreement. It should also be pointed out that the other plaintiffs had no right to possession of the stock until the death of A. H. Jennings, Jr. In addition, Lucile Jennings Gille testified that she had been told by her uncle:

". . . that he and my father had set up this agreement whereby we would have this nice inheritance to look forward to, and he thought mother and father, which was his mother and father, would be very pleased because this had been part of their estate or was their estate and he thought that this was a nice legacy to pass on to the family. . . ."

Significance can also be given to the fact that in 1964 when he suggested the company's assets be distributed, A. H. Jennings, Jr., admitted he had only a life interest. The transfer of the stock by A. H. Jennings, Jr., to his wife, Mae N. Jennings, was not discovered until his death. We must conclude that by reason of the terms of the trust agreement and action of the trustee, A. H. Jennings, Jr., prior to his death, the plaintiffs had no reason to believe the trust was not being administered according to its terms. Accordingly, plaintiffs' cause of action accrued after the death of A. H. Jennings, Jr., when they learned of the stock transfers to Mae N. Jennings.

In *Manka v. Martin Metal Mfg. Co.*, 153 Kan. 811, 113 P. 2d 1041, the court said the filing of annual reports of corporations, showing a list of stockholders, provides notice of the ownership of stock to all interested persons. Defendant seeks to charge plaintiffs with knowledge of the transfer of the stock to Mae N. Jennings on May 29, 1957, by the fact she was listed as owner of 220 shares in the annual report filed with the secretary of state on February 10, 1964. If the *Manka* case stands for the proposition that in every

instance the filing of the annual report of a corporation charges all interested persons with knowledge of its contents, we cannot approve such a rule of law. Our position is that constructive notice of the contents of an annual report of a corporation is not chargeable to interested persons unless and until those interested persons have some reason to believe the trustee of the corporate stock is acting contrary to the trust agreement. In the absence of such a showing we must hold the corporate annual report is not *ipso facto* notice of its contents and we disapprove the language in *Manka v. Martin Metal Mfg. Co.*, supra, to that extent.

Defendant further contends the ten-year statute of limitations contained in K. S. A. 60-513 is a defense to plaintiffs' cause of action based on the assignment of stock made on May 29, 1957 (220 shares). K. S. A. 60-513 provides:

"The following actions shall be brought within two (2) years: (1) An action for trespass upon real property.

"(2) An action for taking, detaining or injuring personal property, including actions for the specific recovery thereof.

"(3) An action for relief on the ground of fraud, but the cause of action shall not be deemed to have accrued until the fraud is discovered.

"(4) An action for injury to the rights of another, not arising on contract, and not herein enumerated.

"(5) An action for wrongful death.

"The cause of action in this section shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall the period be extended more than ten (10) years beyond the time of the act giving rise to the cause of action."

We have not considered or decided this issue although we recognized its existence in *City of Ulysses v. Neidert*, 196 Kan. 169, 409 P. 2d 800. It is the duty of courts to reconcile various provisions of a statute in order to make them consistent, harmonious and sensible if that can be done without doing violence to plain provisions therein contained. (*Phillips v. Vieux*, 210 Kan. 612, 504 P. 2d 196.)

There appears to be some conflict between the provision that a cause of action for fraud has a limitation period of two years after discovery and the provision for an overall limitation period of ten years from the act giving rise to the cause of action. If the ten-year limitation provision applies to actions based on fraud, an action based on the assignment of stock made May 29, 1957, is barred.

K. S. A. 60-513 provides for a two-year limitation in five separate types of actions. Provisions covering accrual of causes of action under the statute is limited in section 3, involving an action based on fraud. The provision for the ten-year limitation period does not mention fraud or the discovery of fraud, but refers to those cases where the fact of injury may become ascertainable sometime following the act causing the injury. In an action based upon fraud, its discovery is simultaneous with the discovery of the injury resulting therefrom. In order to harmonize the statute and give effect to each of its provisions we must conclude the legislature did not intend that an action based on fraud was subject to the ten-year limitation. This position conforms with comments in Gard, Kansas Code of Civil Procedure Annotated, § 60-513, p. 535, and 5 Vernon's Kansas Statutes Annotated, Code of Civil Procedure, § 60-513, p. 32.

Defendant attempts to apply the rule of laches to bar the plaintiffs' cause of action, claiming they should not be allowed to pursue this action by reason of their long delay in asserting their rights. To the contrary is *Yeager v. National Cooperative Refinery Ass'n,* 205 Kan. 504, 470 P. 2d 797. It was held therein that when a statute fixes a limitation period for a claim asserted in a court of law, a court of equity will by analogy follow statutory limits when the claim is raised in an equitable proceeding rather than applying the doctrine of laches.

We hold that the 1943 agreement is a valid and binding express trust and that plaintiffs' cause of action for transfer of trust assets in violation of the terms of the trust is not barred by limitations.

Affirmed.

FROMME, J., not participating.