(593 P 2d 23)

No. 49,578

SARAH V. MERCER, *Appellant,* v. AETNA LIFE INSURANCE COMPANY, *Appellee.*

Opinion filed April 13, 1979.

*Warren G. Jones* and *Edgar Wm. Dwire* of Alkire, Dwire & Wood, of Wichita, for the appellant.

*Jerry G. Elliott* and *Christopher P. Christian* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, for the appellee.

Before REES, P.J., SPENCER and SWINEHART, JJ.

SPENCER, J.: This is an action to recover death benefits allegedly owing under a group life insurance policy. Trial to the court resulted in judgment for defendant and plaintiff has appealed.

William H. Mercer was one of a class of employees eligible to be insured by defendant under a noncontributory group life insurance policy issued by defendant to The Boeing Company as policyholder. As provided in the policy:

"Each employee in an eligible class shall, subject to the exception below, become eligible for Employee Coverage on the latest to occur of:

. . . .

"(iii) the first day of the calendar month following the completion of one full calendar month of continuous employment with a Participant Employer."

Mercer applied for employment with Boeing on June 30, 1975, and was accepted and told to report to work on July 7, 1975. He did so and, on that date, designated his mother, the plaintiff, as beneficiary. He died August 31, 1975. The sole issue is whether Mercer was eligible for employee coverage under the policy at the time of his death.

The trial court found that Mercer's employment with Boeing ended with his death on August 31, 1975; that the contract of insurance was not ambiguous; and, by its terms, Mercer would have become eligible for coverage on September 1, 1975, had he lived and been an eligible employee on that date.

Plaintiff argues that, given the employment date of July 7, 1975, one calendar month from that date would be August 7, 1975; and, following the language set forth in the policy, the first day of a calendar month following the completion of one full calendar month of continuous employment would have been August 8, 1975. She relies on *Allbritten v. National Acceptance Co.,* 183 Kan. 5, 325 P.2d 40 (1958), wherein the Supreme Court defined the word "month" as used in the statute setting the time for taking an appeal and stated:

"The word 'month' has a clear and well-defined meaning, and refers to a particular time. Unless an intention to the contrary is expressed, it signifies a calendar month, regardless of the number of days it contains. Where the word 'month' as employed in a statute means calendar month, a period of a month or months is to be computed not by counting days, but by looking at the calendar, and it runs from a given day in one month to a day of the corresponding number in the next or specified succeeding month." Syl. ¶ 2.

Defendant's position is simply that the term "calendar month" as used in the contract refers to one of the named months in the Gregorian calendar.

Our reading of *Allbritten* compels the conclusion that plaintiff's reliance upon that case is misplaced. *Allbritten* does not purport to define the term "calendar month" but rather the term "month" as employed in a statute and as a measure of time. While the word "month" as so employed may mean a calendar month, it does not necessarily follow that the term "calendar month" is to be interpreted in the manner suggested by plaintiff. In 74 Am. Jur. 2d, Time § 9, p. 593, we find:

"A calendar month is the period of time running from the beginning of a certain numbered day up to, but not including, the corresponding numbered day of the next month, and if there is not a sufficient number of days in the next month, then up to and including the last day of that month. *While the term 'calendar month' means a month as designated in the calendar, without regard to the number of days it may contain, 'thirty days' and 'one month' are not synonymous terms and do not necessarily nor ordinarily mean the same periods of time.*" Emphasis added.

86 C.J.S., Time § 10, p. 840, defines the term as follows:

"The term 'calendar month' is defined as meaning any of the months as adjusted in the calendar, now the Gregorian. . . . It is not a month of any given number of days throughout the entire year, but contains the number of days ascribed to it in the calendar . . . .

"The term 'calendar month' is also defined, but in a different sense, as meaning the time from any day of a month of the Gregorian calendar to any corresponding day (if any; if not, to the last day) of the next month, and in this sense a calendar month refers to a length of time and not to a specific month . . . ."

Neither party argues on appeal that the contract of insurance is ambiguous, and in this we are in agreement. A determination of whether a written contract is ambiguous is a judicial function. *First National Bank of Hutchinson v. Kaiser,* 222 Kan. 274, 278, 564 P.2d 493 (1977). Where the provisions of a written instrument are clear and unambiguous, there is no occasion for applying rules of construction. *Moore v. Adkins,* 2 Kan. App. 2d 139, 145, 576 P.2d 245 (1978). Furthermore, words in a contract are to be understood in their plain, ordinary, or popular sense unless in the context employed they have a peculiar meaning. *Duffin v. Patrick,* 212 Kan. 772, 778, 512 P.2d 442 (1973).

From the record, we conclude that the phrase "first day of the calendar month" means the number one day of a month designated in the calendar, and the phrase "full calendar month" as employed in this contract means the first working day to and including the last day of one of the months designated in the calendar. From this, it follows that for Mercer to have become eligible for employee coverage under the contract, he must have completed one full calendar month of continuous employment, *i.e.,* the month of August, and to have been employed by Boeing on the first day of the calendar month following, *i.e.,* September 1, 1975. Because his death occurred August 31, 1975, the period of his continuous employment was not completed and the insurance on his life never went into effect. Although this may be at variance with the dual meaning applied to the term "calendar month" by the trial court, the result is the same.

Plaintiff contends that to apply our interpretation to the policy of insurance results in gross inequity as Mercer would have been required to work approximately sixty-two days to obtain coverage under the policy while another, who may have commenced employment on July 31st, would have had to work only thirty-one days for the same coverage. While this may be true, there are understandably valid reasons why defendant and the policy-holder might agree that employee coverage should take effect on the first day of a calendar month rather than on various dates of each month, as might otherwise be required. It must be borne in mind that we are not here concerned with the ordinary contract of insurance with an individual, but rather with a plan for group life insurance to be provided a relatively large number of employees

as an incidental benefit to their employment. This is the product of negotiations between the policyholder and its various labor unions. It does not appear unreasonable that the method prescribed or some other method to establish eligibility for employee coverage consistent with the employer's need for records, reporting, and premium payment procedures be incorporated in the terms of the contract. See *Marriot v. Pacific National Life Assurance Co.,* 24 Utah 2d 182, 467 P.2d 981 (1970).

It is not the function of the courts to make contracts but rather to enforce them. *Fourth Nat'l Bank & Trust Co. v. Mobil Oil Corp.,* 224 Kan. 347, 582 P.2d 236 (1978). A court may not make a new contract or rewrite the same under the guise of construction. *Davenport v. Dickson,* 211 Kan. 306, 507 P.2d 301 (1973).

Judgment affirmed.