(33 P.3d 609)

No. 83,269 [1]

BENJAMIN W. STARK, *et al., Appellants,* v. MERCANTILE BANK, N.A., Successor in Interest to THE JOHNSON COUNTY NATIONAL BANK AND TRUST COMPANY, and NATIONSBANK, N.A., Successor in Interest to BOATMEN'S BANK, N.A., *Appellees.*

Opinion filed August 4, 2000.

*John J. Benge* and *Michael L. Hodges*, of Benge Law Firm, of Kansas City, Missouri, for appellants.

*Eric G. Zahnd* and *Steven E. Mauer*, of Bryan Cave LLP, of Kansas City, Missouri, for appellee NationsBank, N.A.

*Mark D. Hinderks*, of Stinson, Mag & Frizzell, P.C., of Leawood, for appellee Mercantile Bank, N.A.

Before MARQUARDT, P.J., BEIER, J., and JOHN W. WHITE, District Judge, assigned.

BEIER, J.: Plaintiffs-appellants appeal the district court's decision to grant the defendant banks' motions to dismiss. The district court ruled that plaintiffs' claims were barred by the statute of repose. We affirm.

The parties appear to agree that plaintiffs Benjamin W. Stark, Allan Breed Stark, Mary Breed Brink, Barbara Chapman, Martha McCormick, Nancy Gee, Ruth Hanna, and Thomas Millar are beneficiaries of a trust[2] created in 1949 by J. Rolland Prentice Breed,

---

[2] We find no support for this basic fact in the appellate record other than references of counsel to the plaintiffs as beneficiaries and an assumption made by the district court in its decision. We also note that the last names of several, but not all, of the plaintiffs listed in the caption of the *Second Amended Petition* correspond to the last names of certain of Breed's children, leading us to the deduction that at least those individuals are descendants whose rights derive from those of their parents. It would have been helpful if plaintiffs had, at some point, set out enough of a personal history to connect each to the subject matter of the dispute.

who died in 1951. The assets held by the trust include a parcel of land located at 75th and Metcalf in Overland Park, Kansas.

Plaintiffs take issue with a commercial lease of the land, entered into in 1957 by Breed's executors and the trustee, Johnson County National Bank & Trust Co. (Johnson County Bank), on the one hand and Southwest Development Company, Inc., (Southwest) on the other. Their petition named Mercantile Bank, N.A., (Mercantile) as a defendant because it is the successor in interest to Johnson County Bank. Johnson County Bank was appointed a trustee for the parcel of land because First National Bank of Kansas City, N.A., (First National), the original trustee, was precluded from acting as a trustee for a property located in Kansas.

The lease provided for an initial term of 51 years and an option to renew for an additional 25 years. The annual rent for the first 2 years was $7,286, and the annual rent for the remaining years was $11,656. Additional rent of $1,200 per year was to be paid if sales from the leased premises exceeded $5 million per year. A provision was also made for a .5 percent annual adjustment of the additional rent during the renewal period.

Before the lease was executed, the Johnson County probate court held a hearing at the behest of the attorney appointed to represent the interests of the unborn, unascertained, minor, or legally disabled beneficiaries of the trust, a group of individuals that apparently included all of the plaintiffs. Johnson County Bank was placed on strict proof of its contention that it had

"made an exhaustive investigation in regard to persons who might be interested in leasing said property and after obtaining several offers with respect thereto has determined in its best judgment that a certain offer of lease made by Southwest Development Company, Inc., . . . is the most favorable one that can be obtained."

At the conclusion of the hearing, the probate court ruled that the lease was in the best interests of the trust estate and the beneficiaries and authorized its execution.

Subsequently, Southwest subleased the land to Katz Drug Company. A new building was constructed which housed a Katz Drug Store. The heart of plaintiffs' case is their allegation that Isaac Katz was one of the principals of Katz Drug Company, was on the board

of Johnson County Bank, and was an influential customer of First National. Plaintiffs' position is that Mr. Katz' multiple roles inevitably resulted in a conflict of interest that polluted the lease transaction, artificially depressing the rental rate and making the lease commercially unreasonable. Defendants, for their part, state that the allegation is untrue, alleging that Katz' death predated the lease.

Johnson County Bank resigned and withdrew as trustee in September 1985, and the probate court appointed Boatmen's First National Bank of Kansas City (Boatmen's) as substitute. Defendant NationsBank, N.A., (NationsBank) is the successor to Boatmen's. On the exit of Johnson County Bank, the probate court observed that the bank's accounts "should be settled and allowed and all of its acts and proceedings as trustee have been in accordance with law and the orders of this Court and are approved."

The record reflects that plaintiffs filed suit against Mercantile and NationsBank on December 1, 1998. Their Second Amended Petition eventually alleged breach of fiduciary duty, fraud, and gross negligence—all claims flowing from the alleged conflict of interest involving Katz. Each defendant bank filed a motion to dismiss based on the statute of repose and a motion for summary judgment based on the doctrines of res judicata and collateral estoppel.

Plaintiffs argued in response to the motions that (1) the statute of repose set forth in K.S.A. 60-513(b) cannot be applied to causes of action based on wrongful conduct predating its enactment; (2) the statute of repose does not apply to their fraud claim; and (3) none of the requirements for the application of the doctrines of res judicata or collateral estoppel could be met in this case.

The district court ruled in defendants' favor on the motions to dismiss, finding plaintiffs' various claims barred by the statute of repose. It then held that the summary judgment motions based on res judicata and collateral estoppel were moot and did not address their merits.

## Standard of Review

Our standard of review when a motion to dismiss has been granted in the district court was restated in *Colombel v. Milan*, 24 Kan. App. 2d 728, 952 P.2d 941 (1998):

" 'Disputed issues of fact cannot be resolved or determined on a motion to dismiss for failure of the petition to state a claim upon which relief can be granted. The question for determination is whether in the light most favorable to plaintiff, and with every doubt resolved in plaintiff's favor, the petition states any valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim.'

" 'In considering a motion to dismiss for failure of the petition to state a claim for relief, a court must accept the plaintiff's description of that which occurred, along with any inferences reasonably to be drawn therefrom. However, this does not mean the court is required to accept conclusory allegations on the legal effects of events the plaintiff has set out if these allegations do not reasonably follow from the description of what happened, or if these allegations are contradicted by the description itself.' " 24 Kan. App. 2d at 729 (quoting *Ripley v. Tolbert*, 260 Kan. 491, Syl. ¶¶ 1, 2, 921 P.2d 1210 [1996]).

Further, when the issue before us requires interpretation of a statute, we are faced with a question of law, and an appellate court's review of a question of law is unlimited. *Decker v. Kansas Dept. of SRS*, 24 Kan. App. 2d 155, 157, 942 P.2d 667, *rev. denied* 262 Kan. 960 (1997). Review of the district court's ruling requires us to interpret the meaning and potential applicability of statutes of limitation and repose.

### General Applicability of Statute of Repose

Plaintiffs first argue that the statute of repose found in K.S.A. 60-513 is inapplicable to their claims because it was not enacted until 1987. That statute now reads in pertinent part:

"(a)   The following actions shall be brought within two years:

. . . .

(3)   An action for relief on the ground of fraud, but the cause of action shall not be deemed to have accrued until the fraud is discovered.

(4)   An action for injury to the rights of another, not arising on contract, and not herein enumerated.

"(b)   Except as provided in subsections (c) and (d), the causes of action listed in subsection (a) shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury, or, if the fact of injury is not reasonably ascertainable until some time after the initial act, then the period of limitation shall not commence until the fact of injury becomes reasonably ascertainable to the injured party, but in no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action.

. . . .

"(e) The provisions of this section as it was constituted prior to July 1, 1996, shall continue in force and effect for a period of two years from that date with respect to any act giving rise to a cause of action occurring prior to that date." K.S.A. 1999 Supp. 60-513.

Before K.S.A. 60-513 was amended in 1996, it provided that the section as written before July 1, 1987, would continue in force "for a period of two years from that date with respect to any act giving rise to a cause of action occurring prior to that date." The statute was rewritten in 1987 to include language effective to bar a suit when 10 years had passed since the wrongful act giving rise to it. See *Harding v. K. C. Wall Products, Inc.*, 250 Kan. 655, 659-60, 831 P.2d 958 (1992).

Plaintiffs argue that the statute of repose is substantive rather than procedural and therefore cannot be applied retroactively to their claims. Rather, they insist, their causes of action are governed by the statute in effect in 1957, G.S. 1949 60-306, that required civil actions "for injury to the rights of another, not arising on contract, and not hereinafter enumerated" and "for relief on the ground of fraud," which accrued on discovery, to be brought within 2 years. Because the 1957 version of the statute contained no repose language barring suit 10 years after the act giving rise to the cause of action, plaintiffs argue that their claims were still viable 41 years after the execution of the lease.

We do not agree.

Although plaintiffs are correct that statutes of repose have been characterized as substantive while statutes of limitation have been characterized as procedural, our Supreme Court has invoked the distinction to protect potential defendants from having claims against them revived rather than to preserve potential plaintiffs' claims into infinity. See *Shirley v. Reif*, 260 Kan. 514, 523-27, 920 P.2d 405 (1996); *Harding*, 250 Kan. at 669. In addition, we do not believe defendants seek an impermissible retroactive application of the statute of repose to wrongful conduct predating its enactment. Rather, they seek prospective application of the statute to a lawsuit filed many years later.

Moreover, the Kansas Supreme Court has opined that claims arising out of conduct predating the 1987 amendment by 10 years

or more would be barred if filed after the expiration of the 2-year grace period in 1989. See *Admire Bank & Trust v. City of Emporia*, 250 Kan. 688, 694-700, 829 P.2d 578 (1992).

We have no difficulty discerning legislative intent to erect a final, nonnegotiable bar to stale claims in the creation and articulation of the 10-year time limit of K.S.A. 60-513 and its companion 2-year transitional grace period. " ' "It is presumed the legislature had and acted with full knowledge and information as to the subject matter of the statute, as to prior and existing law and legislation on the subject of the statute and as to the judicial decisions with respect to such prior and existing law and legislation." ' " 250 Kan. at 697-98 (quoting *Stephens v. Snyder Clinic Ass'n*, 230 Kan. 115, 121-23, 631 P.2d 222 [1981]) (interpreting 2-year grace period as applied to medical malpractice action). And our interpretation is supported by the general rule that statutes must be construed to avoid unreasonable results. See *KPERS v. Reimer & Koger Assocs., Inc.*, 262 Kan. 635, 643, 941 P.2d 1321 (1997). It would certainly be unreasonable if K.S.A. 60-513 was twisted to close the courthouse door to plaintiffs who wished to sue on wrongful acts committed after 1987 while it welcomed those pursuing redress for wrongful acts even more remote in time. The district court was correct in holding that 60-513 should be applied to determine the viability of plaintiffs' claims.

### Fraud and the Statute of Repose

Plaintiffs' second argument is that a statute of repose cannot apply to a fraud claim and that each of their causes of action is based on an allegation of fraud on the part of the defendant banks. They cite two decisions in support of their argument that the statute cannot apply to fraud claims: *Jennings v. Jennings*, 211 Kan. 515, 527, 507 P.2d 241 (1973), and *Robinson v. Shah*, 23 Kan. App. 2d 812, 814-16, 936 P.2d 784 (1997). Both cases demonstrate that plaintiffs' claims do not fit any fraud exception to the statute of repose.

In *Jennings*, plaintiffs sued when they discovered that certain stock expected to be transferred and delivered to them had already been assigned by the donor/trustee to another family member. In-

terpreting the predecessor statute to K.S.A. 60-513, the court held that the action could proceed. 211 Kan. at 527. The beneficiaries of the trust were not charged with the duty to investigate the action of the trustee "until such facts as would prompt a normal alert person to make further inquiry are known." 211 Kan. at 524.

In *Robinson*, the plaintiff patient brought suit less than 2 years after she discovered her physical problems were caused by surgical sponges left in her abdomen but more than 10 years after her physician began concealing the presence of the sponges. A panel of this court held that the fraudulent concealment of the physician tolled the statute of limitations and the statute of repose on the plaintiff's fraud claim. 23 Kan. App. 2d at 826. In essence, our court refused to permit the physician to shield herself from liability through active misrepresentation to a person incapable of discovering the truth on her own.

We do not dispute that these cases support the general idea plaintiffs seek to promote: Fraud and fraudulent concealment either toll the statute of repose or make it inapplicable. However, the facts of this case, as alleged in the second amended petition, fall far short of fraud or fraudulent concealment.

In this case, there is nothing in the pleadings that begins to explain why the plaintiffs failed to file their lawsuit for 41 years or why that delay should be laid at the feet of defendants. Nowhere does it say how or why plaintiffs, who were represented by counsel in the probate proceeding, and who apparently enjoyed long relationships with the original beneficiaries, could have been unaware of or misled about what obviously became a bargain rental rate for the property much more than 2 years before the filing of the suit. Nowhere is it explained how any alleged relationship between Katz and the predecessors of the defendant banks actually led to fraud or fraudulent concealment of pertinent information about a more commercially reasonable rental rate. At oral argument, counsel for plaintiffs conceded that the only evidence the Katz relationship was concealed was that "one uncle" was not told about it. At no time have we been told what finally prompted plaintiffs to make the sort of inquiry about the facts that the long-term lease at a remarkably low rate should have prompted in a "normal

alert person" or when it occurred. On the contrary, it appears plaintiffs may have merely chosen to wait until the original beneficiaries and executors were deceased or otherwise out of the picture.

In short, plaintiffs have failed to demonstrate that they have any cause of action for fraud or fraudulent concealment that withstands or avoids application of the statute of repose. Even under *Jennings* and *Robinson*, a plaintiff cannot be deliberately ignorant regarding the behavior of his fiduciary and blame any more complete understanding acquired later on the fiduciary's fraud. Even if plaintiffs could prove a nondisclosure of the Katz relationship in this case, not every nondisclosure is fraud or fraudulent concealment. See *Robinson*, 23 Kan. App. 2d at 820. Plaintiffs fail to state a claim for which relief can be granted, and dismissal under K.S.A. 60-212(b)(6) was appropriate.

Affirmed.