Leben, J.:
*763 The plaintiff in this case, who has filed under the pseudonym John F.M. Doe, says that he was abused in 1972-when he was 11 years old-by a Catholic priest. Four decades later, when Doe was 53, he filed a lawsuit seeking damages for the abuse. The district court dismissed Doe's claims after it concluded that it was too late under Kansas law for him to pursue them. Doe has appealed to our court.
We will begin our overview of the issues of this case and this decision with the two different types of time limitations that prevent claims from being litigated. One is a statute of limitations.
*4 Under these, there's a time clock that starts running when an action is said to "accrue," meaning when the legal claim has fully come into existence, and any lawsuit must be filed within a time period set by the legislature. In Kansas, most torts cases, including ones for negligence, must be brought within 2 years, with the time clock normally starting to run when the injury occurs, which might be well after the act of negligence that caused the injury (say, when a negligently manufactured product doesn't cause injury until many years later). See K.S.A. 60-513(b).
To give some certainty that claims for past acts will go away at some point, there's a second type of time limit states often create for certain types of claims-known as a statute of repose. Under this type of statute, even if an action has not accrued (and even if the plaintiff has not yet been injured and doesn't know, for example, that a product he or she has bought was negligently manufactured), there may still be some time limit based on when the defendant's last action leading to the lawsuit took place. See McCann v. Hy-Vee, Inc., 663 F.3d 926, 930 (7th Cir. 2011) ; Black's Law Dictionary 1637 (10th ed. 2014). This second type of limit-the statute of repose-is where the main problem with Doe's suit lies.
Like most states, Kansas recognizes that a minor can't file his or her own lawsuit, so a person like Doe who has been harmed while a child generally can file suit within 1 year after turning 18. See K.S.A. 60-515(a). But there's also a statute of repose for such claims-"no such action shall be commenced ... more than eight years after the time of the [defendant's] act giving rise to the cause of action." K.S.A. 60-515(a). In Doe's case, the alleged abuse took place in 1972; under the statute of repose established by our legislature, he simply couldn't pursue the claims 40 years later.
With that overview, we will move next to the factual information set out in Doe's petition, which initiated the lawsuit. We'll then discuss in more detail each of the legal issues he has presented in this appeal.
*764 FACTUAL AND PROCEDURAL BACKGROUND
Because this case was dismissed at the pleading stage, we must accept as true the facts set out in Doe's amended petition. That's *5 because on a motion to dismiss a plaintiff's claims without proceeding further with the lawsuit, the court must accept the facts as set out in the petition. Platt v. Kansas State University, 305 Kan. 122, 126, 379 P.3d 362 (2016). The defendants have suggested that some of the allegations identifying specific defendants (Catholic Church entities and certain religious orders) may not be entirely accurate, but we will accept Doe's allegations for the purposes of this appeal. (The inaccuracies the defendants suggest do not affect the legal questions about whether Doe can proceed with his lawsuit.)
Doe alleges he was sexually abused in 1972 by Father Finnian Meis, a priest then serving at The Church of the Good Shepherd in Shawnee, Kansas. At the time, Doe was 11 years old. Doe was referred to Meis for counseling following disciplinary issues at the local Catholic school. During these sessions, Meis would "lay[ ] on top of [Doe] and forc[e] his tongue down [Doe's] throat in addition to other weird counseling exercises, including relieving anger with a foam pillow shaped like a bat."
Doe told his mother about Meis kissing him after the first session, and she contacted Meis. He reassured her that nothing inappropriate or outside the bounds of proper therapy had occurred but said he would no longer kiss the boy. Doe then resumed counseling with Meis, but Doe has no further recollection of anything that happened during the sessions. Meis allegedly told Doe not to tell anyone about the events occurring during counseling. Meis was removed from the priesthood in 1986 and died in 1997.
According to Doe, Meis had faced other allegations of abuse, including one before he was transferred to Good Shepherd Church. In 1971, Meis was posted at the St. Joseph Monastery in Hays, Kansas, and was a member of the Capuchin Order, a Catholic religious order of friars and priests. Meis served as the leader of a campus Catholic organization for a local college there. A student began seeing Meis for grief counseling following the death of her father. She told a nun and Capuchin administrators that Meis had used "relaxation techniques" to sexually molest her during their counseling sessions. Shortly after that allegation, Meis was transferred to the Good Shepherd Church in 1972. Doe claims that the same student *6 came forward again in 2003 and reported Meis' misconduct to the Capuchin Review Board, including Capuchin administrators.
At least two other people alleged Meis had sexually abused them. In 2003, another parishioner from the Good Shepherd Church told the Archdiocese of Kansas City that Meis had abused him when he was a child during counseling, alleging that Meis had lain on top of him, French kissed him, and used certain "relaxation" techniques. A priest at the Archdiocese directed the parishioner to contact the Midwest Province of the Capuchin Order. According to Doe, that organization told the parishioner that it had received no other complaints about Meis. Another individual also reported abuse to the Archdiocese and the Capuchin Province, but he was told that unless three families were willing to come forward publicly about Meis, nothing could be done.
Doe says that he repressed all memories of the abuse until 2011. At that point, he contacted the Archdiocese of Kansas City and the Capuchin Order and told them about Meis' conduct and abuse. Following a meeting with the Independent Review Board, the Archdiocese of Kansas City, through Archbishop Joseph Naumann, told Doe that it could not substantiate the credibility of his claims. That finding was forwarded to the Capuchin Province for Mid-America.
On April 1, 2014, Doe filed suit against Father Christopher Popravak, the Provincial Minister of the Capuchin Province of Mid-America; the Capuchin Province of Mid-America; the Province of St. Augustine of the Capuchin Order; Father David Nestler, the Provincial Minister of that Capuchin Order; the Archdiocese of Kansas City; and Archbishop Naumann, the Archbishop of the Archdiocese of Kansas City. Doe sued all of the defendants under several theories: (1) for child sexual abuse and/or battery based on *765 the conduct of their employee, Meis; (2) for breach of fiduciary duty; (3) for fraud and conspiracy to commit fraud; (4) for negligence; and (5) for negligent supervision and retention of Meis. Doe also sued the Capuchin Order and its provincial minister for outrageous conduct.
The defendants asked the district court to dismiss the lawsuit, arguing, in part, that the entire action was time-barred because, *7 under K.S.A. 60-515(a), Doe had to bring his claim within 8 years of the abuse in 1972. After conducting a hearing, the district court concluded that all of Doe's claims were time-barred under K.S.A. 60-515(a). But the court noted that Doe had also alleged fraudulent concealment, a claim that can toll, or pause the clock on, the time limit to bring a lawsuit. The court held that for fraudulent concealment to operate as a tolling mechanism, the plaintiff must plead with particularity that the defendant committed specific acts that prevented the plaintiff from filing suit in a timely fashion. The court determined that Doe had made only general allegations that the defendants knew or had reason to know that Meis was sexually abusing children and was a danger and, therefore, Doe had not sufficiently pled fraudulent concealment to toll the time limit. Instead of dismissing the case at that point, the district court gave Doe the opportunity to amend his petition "to state with sufficient particularity those facts which support his contention that 'fraudulent concealment' prevented his filing of this lawsuit for some 42 years."
Doe then amended his petition, and the defendants filed additional motions to dismiss the suit. After a hearing, the district court dismissed the suit with prejudice, meaning Doe could not refile it. In its order, the court said that although the amended petition contained 102 new paragraphs, none of them alleged conduct by the defendants that prevented Doe from filing his suit within the 8-year time limit imposed by K.S.A. 60-515(a). The court also concluded that Doe had not established any facts that would establish fraudulent concealment to toll the time limit to bring suit, so all of his claims were barred.
Doe has appealed the dismissal to this court. We review a district court's granting of a motion to dismiss independently, with no required deference to the district court. Platt, 305 Kan. at 126, 379 P.3d 362. If the facts set out in Doe's petition and the reasonable inferences from those facts support a potentially viable claim based on the plaintiff's theory or any other possible theory, then the dismissal by the district court must be reversed. See Cohen v. Battaglia, 296 Kan. 542, 546, 293 P.3d 752 (2013).
*8 ANALYSIS
I. The District Court Properly Applied the 8-Year Statute of Repose from K.S.A. 60-515(a).
As we noted in the introduction to our opinion, two different types of time limits may apply in a given case. A statute of limitations sets a time period that begins when a cause of action accrues and ends after a specified length of time. In a negligence case, for example, a defendant's negligent act must cause injury or damage to the plaintiff for the cause of action to accrue. See K.S.A. 60-513(b) ; LCL, LLC v. Falen, 53 Kan.App.2d 651, 660, 390 P.3d 571 (2017), petition for rev. filed March 20, 2017. Sometimes both the negligent act and injury happen at more or less the same time, as in a car accident, but sometimes the injury or damage happens later, as would be the case for a negligently manufactured product that only causes injury well after the date of manufacture.
Statutes of repose differ in that their time limit starts to run on the date the defendant acted-even if injury doesn't occur until later (sometimes much later). A statute of repose generally sets some time limit that starts to run based on the date the defendant acted, which may not be the date someone was injured and a cause of action accrued. So when the legislature adopts a statute of repose, in some situations, the time limit set by a statute of repose may expire before the plaintiff is injured or before the plaintiff learns of the defendant's negligent act. McCann, 663 F.3d at 929.
As Judge Richard Posner has noted, "[a] statute of repose is strong medicine, precluding as it does even meritorious suits because of delay for which the plaintiff is not *766 responsible." McCann, 663 F.3d at 930. But when they apply, statutes of repose reflect a substantive choice made by the legislature to grant substantive relief against potential lawsuits when the specified time period after a defendant's action has elapsed. Once the statute-of-repose time limit has expired, the legal claim is abolished even if the plaintiff may not yet be aware of the injury. Harding v. K.C. Wall Products, Inc., 250 Kan. 655, 668, 831 P.2d 958 (1992). Accordingly, the Kansas Supreme Court has held that the potential defendant at this point has a vested, or protected, right to use the statute of repose *9 as a defense under the Kansas Constitution. 250 Kan. at 667-68, 831 P.2d 958. So even the legislature cannot revive a legal claim barred by a statute of repose because doing so would constitute taking the potential defendant's property (the vested right) without due process. 250 Kan. at 669, 831 P.2d 958.
For typical torts cases, including negligence, the Kansas Legislature has provided a 2-year statute of limitations that starts on the date the action accrued-normally when injury occurs, which might be well after a negligently manufactured product had been sold. But the legislature has also provided a 10-year statute of repose, so no suit can be brought if the injury from that negligently manufactured product doesn't occur for more than 10 years after its sale. See K.S.A. 60-513(b) ("[I]n no event shall an action be commenced more than 10 years beyond the time of the act giving rise to the cause of action."). And that's true even though the party who may be injured by that product may have had no way to know of the manufacturing defect before the statute-of-repose time limit had run. See Chang v. Baxter Healthcare Corp., 599 F.3d 728, 733 (7th Cir. 2010).
With that background, let's turn to the two time-limitation statutes that are central to the parties' arguments in this case: K.S.A. 60-515 and K.S.A. 2016 Supp. 60-523. K.S.A. 60-515(a) provides special time limits to file a suit when a person is under 18 years old, incapacitated, or imprisoned for a term shorter than the person's natural life. The statute generally provides that suit may be brought within 1 year after that capacity (in which the person may be unable to sue) has ended-but with an overall time limit of 8 years after the act giving rise to the legal claim:
"Except as provided in K.S.A. 60-523, if any person entitled to bring an action, other than for the recovery of real property or a penalty or a forfeiture, at the time the cause of action accrued or at any time during the period the statute of limitations is running, is less than 18 years of age, an incapacitated person or imprisoned for a term less than such person's natural life, such person shall be entitled to bring such action within one year after the person's disability is removed, except that no such action shall be commenced by or on behalf of any person under the disability more than eight years after the time of the act giving rise to the cause of action." (Emphasis added.) K.S.A. 60-515(a).
We find K.S.A. 60-515 exceptionally clear in its language.
*10 Unless there's an exception in K.S.A. 2016 Supp. 60-523 (which we will consider in a moment), it applies whenever "any person" was entitled to bring an action and was a minor "at the time the cause of action accrued." In such cases, "no such action shall be commenced ... more than eight years after the time of the act giving rise to the cause of action."
"[N]o such action" covers any claim that could have been brought while the person was a minor (having "accrued" or the statute of limitations having started to run). Here, Doe was aware of what happened when it occurred; he even told his mother about the priest having kissed him. Although Doe says he later suppressed these memories, only to recover them in 2011, he doesn't argue that K.S.A. 60-515 is inapplicable-this was "such [an] action," and the 8-year statute of repose applied to it.
But there's an exception to the general rules of K.S.A. 60-515 provided in K.S.A.2016 Supp. 60-523, and Doe does argue that the exception applies to him. K.S.A. 2016 Supp. 60-523(a) provides a statute of limitations for claims of damage from childhood sexual abuse-a person must bring suit for such damages within 3 years of turning 18 or within 3 years "from the date the person *767 discovers or reasonably should have discovered that the injury or illness was caused by childhood sexual abuse, whichever occurs later." The problem with Doe's argument, though, is that his claim for damages caused by childhood sexual abuse was barred by the statute of repose before K.S.A. 2016 Supp. 60-523 was written.
Some language in K.S.A. 2016 Supp. 60-523 does seem supportive of Doe's argument. The statute allows suit to be filed "for recovery of damages suffered as a result of childhood sexual abuse" for up to "three years after the date the person attains 18 years of age or ... three years from the date the person discovers or reasonably should have discovered that the injury ... was caused by childhood sexual abuse, whichever occurs later." K.S.A. 2016 Supp. 60-523(a). And the statute provides that this 3-year limitation period applies even to causes of action that "would be barred" under "the period of limitation applicable prior to July 1, 1992." K.S.A. 2016 Supp. 60-523(d)(1). (The reason for the July 1, 1992, date is that this statute was originally enacted in 1992, though in a form somewhat different than today's statute. See L. 1992, ch. 307, § 1.)
*11 We must return to the distinction between a statute of limitations and a statute of repose. K.S.A. 60-515 contains both a statute of limitations (1 year after a minor turns 18) and a statute of repose (8 years after the act giving rise to the claim). K.S.A. 2016 Supp. 60-523 contains only a statute of limitations (3 years from actual or imputed discovery). The problem for Doe is the substantive nature of a statute of repose. If his claim was barred by a statute of repose before K.S.A. 2016 Supp. 60-523 was first enacted in 1992, the legislature has no authority to revive the claim even if it wants to do so. Harding, 250 Kan. at 669, 831 P.2d 958.
Doe alleges that the abuse occurred in 1972, so the last possible date on which an act of sexual abuse could have occurred-under Doe's allegations-would be December 31, 1972. The 8-year statute of repose would have begun to run on the date of that last act. See Ripley v. Tolbert, 260 Kan. 491, 498, 921 P.2d 1210 (1996) ; Shirley v. Reif, 260 Kan. 514, 526, 920 P.2d 405 (1996). So the time period given under the statute of repose expired no later than December 31, 1980. There was not a viable cause of action still in existence when the legislature adopted K.S.A. 60-523 in 1992, and the defendants had a substantive right under the statute of repose not to have to defend against these claims. See Ripley, 260 Kan. at 511-12, 921 P.2d 1210 ; Shirley, 260 Kan. at 524, 920 P.2d 405.
Our conclusion that K.S.A. 60-515 applies here is supported by the Kansas Supreme Court's decision in Ripley. There, the 50-year-old plaintiff recalled repressed memories of childhood sexual abuse in 1991 and filed a lawsuit within 3 years of remembering the abuse, claiming K.S.A. 60-523 applied. The Ripley court held that the "language makes it clear that the 8-year statute of repose under 60-515(a) applies to all tortious acts committed while the plaintiff is a minor, regardless of how old the plaintiff is (a minor or an adult) when the action actually accrues." 260 Kan. at 497, 921 P.2d 1210. The court concluded that based on the allegations, the statute of repose in K.S.A. 60-515(a) expired in either 1969 or 1973. 260 Kan. at 498, 921 P.2d 1210. In this way, a minor's claim may be barred before the minor or the minor's parents even discover the injury or the cause of such injury. See Bonin v. Vannaman, 261 Kan. 199, 212-13, 929 P.2d 754 (1996).
There is one more wrinkle about K.S.A. 60-515 that we must *12 discuss. Doe correctly notes that the version of K.S.A. 60-515 in effect in 1972 did not contain the 8-year time bar. At the time of the alleged abuse in 1972, K.S.A. 1972 Supp. 60-515(a) provided that a minor had 1 year after turning 18 to bring any claims that had accrued while he or she was under 18, and it then provided a 22-year statute of repose: "[N]o such action shall be maintained by or on behalf of any person under the disabilities specified after twenty-two (22) years from the time the cause of action shall have accrued."
The statute was amended in 1976, changing the time period for the statute of repose from 22 years to 8. L. 1976, ch. 254, § 3. Doe suggests that because statutes of repose are substantive, he had a vested right of action at *768 the time of the abuse. He claims that retroactively applying the 8-year time bar to his claims would violate his substantive rights. If this court applied the 22-year time bar, Doe's claims would have expired on December 31, 1994, so the enactment of K.S.A. 60-523 in 1992 would have applied and revived his claims.
But Doe has not cited any case in which the Kansas Supreme Court has refused to enforce a reasonable statute of repose enacted by the legislature, even if it has changed over time. Doe notes the Harding case, but that case merely allowed the legislature to substitute a longer statute of limitations for a shorter one-even if the period previously provided had expired for a particular plaintiff. 250 Kan. at 670, 831 P.2d 958. As the court noted in Harding : "The legislature cannot revive a cause of action barred by a statute of repose ...." 250 Kan. at 669, 831 P.2d 958.
The district court properly applied K.S.A. 60-515, not K.S.A. 2016 Supp. 60-523. Once the statute of repose under K.S.A. 60-515 barred Doe's claims, nothing in K.S.A. 2016 Supp. 60-523 could bring those claims back to life. Accordingly, Kansas courts have rejected claims similar to Doe's in other cases. See Ripley, 260 Kan. at 497-98, 921 P.2d 1210 (applying 8-year time bar in K.S.A. 60-515 [a] to claims of abuse that arose before 1976 amendment); Stark v. Mercantile Bank, N.A., 29 Kan.App.2d 717, 722, 33 P.3d 609 (2000) (applying statute of repose that was enacted after date of act that caused injury);
*13 Doe v. St. Benedict's Abbey, No. 98,675, 2008 WL 3368248, at *7 (Kan. App. 2008) (unpublished opinion) (applying statute of repose to bar claims for childhood sexual abuse by priest rather than limitation period under K.S.A. 60-523 ).
II. The Statute of Repose Was Not Tolled or Stopped from Running by Fraud or Fraudulent Concealment .
Sometimes, a statute of limitations or repose can be stopped from running-or "tolled"-for some period of time. Kansas courts have specifically held that fraud and fraudulent concealment can toll a statute of repose when the underlying claim is for fraud. Stark, 29 Kan.App.2d at 724, 33 P.3d 609 ; Robinson v. Shah, 23 Kan.App.2d 812, Syl. ¶ 6, 936 P.2d 784 (1997) ; see Hemphill v. Shore, 295 Kan. 1110, 1124-25, 289 P.3d 1173 (2012).
Doe's fraudulent-concealment argument is that even if the 8-year statute of repose in K.S.A. 60-515 applies, it was tolled because the defendants had fraudulently concealed the abuse either by affirmative actions and statements or by silence when they had a duty to speak. In particular, Doe alleges the defendants knew that Meis had sexually abused someone before they sent him to serve at Good Shepherd Church but continued to hold him out as a trustworthy priest and counselor. Doe asserts this concealment enabled Meis to sexually abuse him and others and also ratified Meis' alleged misconduct.
Doe cites to Robinson, in which the plaintiff underwent surgery and began experiencing complications almost immediately afterwards. Based on an X-ray, the defendant doctor knew that she had left surgical sponges in the plaintiff's body, but she deliberately lied to the plaintiff and told the plaintiff that the complications were not from the surgery. The plaintiff continued to see the doctor for several years with complaints of abdominal pain, but the doctor continued to conceal the existence of the surgical sponges. After the applicable statutes of limitations and statutes of repose had expired, the plaintiff discovered the sponges and sued the doctor for malpractice and fraud. The Robinson panel concluded that the plaintiff had made a valid claim for fraud resulting in the loss of a cause of action (the malpractice claim that was time-barred) and that the defendant's intentional fraudulent actions in concealing the injury and *14 deceiving the plaintiff tolled the statute of limitations and statute of repose for that claim. 23 Kan.App.2d at 824-27, 936 P.2d 784.
Doe also cites Stark, in which our court agreed that fraudulent concealment either tolls the statute of repose or renders it inapplicable. 29 Kan.App.2d at 724, 33 P.3d 609. Nevertheless, the Stark court found that the plaintiffs had failed to allege facts to support either fraud or fraudulent concealment, noting *769 that the plaintiffs had not explained why they had failed to file suit for over 40 years "or why that delay should be laid at the feet of the defendants." 29 Kan.App.2d at 724, 33 P.3d 609. Thus, Stark merely stands for the proposition that only valid, sufficiently pled claims of fraud and fraudulent concealment can toll a statute of repose.
The defendants argue that Doe has not adequately pled fraudulent concealment to toll the statute of repose. They assert that Doe has confused fraudulent concealment as a legal claim for a type of fraud with the concept as it is used to toll the running of a statute of limitations or statute of repose. In essence, the defendants argue that for fraudulent concealment to toll the statute of repose, Doe must show that the defendants took some affirmative act to conceal or prevent Doe from discovering the cause of action before the statute of repose expired.
Friends University v. W.R. Grace & Co., 227 Kan. 559, 608 P.2d 936 (1980), supports the defendants' argument. In it, the Kansas Supreme Court said that for fraudulent concealment of a cause of action to toll the statute of limitations, " 'the concealment must be fraudulent or intentional and, in the absence of a fiduciary or confidential relationship, there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action.' " 227 Kan. at 564, 608 P.2d 936 (quoting 51 Am. Jur. 2d, Limitation of Actions § 148, pp. 719-21 ). The court emphasized that the fraudulent concealment requires additional, separate, affirmative actions beyond the original act of fraud supporting the claim:
" 'Although mere silence or failure to disclose may not in itself constitute fraudulent concealment, any statement, word, or act which tends to the suppression of the truth renders the concealment fraudulent. In such cases, by adding to the original fraud affirmative efforts to divert, mislead, or prevent discovery, a continuing character is given to the original act which deprives it of the protection of the statute [of limitations] until discovery. Where some affirmative act of concealment *15 takes place, it is not material whether the concealment was previous or subsequent to the accruing of the cause of action. The question is whether there was a design to prevent the discovery of the facts which gave rise to the action, and whether the act operated as a means of concealment. ' " (Emphasis added.) 227 Kan. at 564, 608 P.2d 936 (quoting 51 Am. Jur. 2d, Limitation of Actions § 148, pp. 719-21 ).
In concluding that fraudulent concealment did not toll the statute of repose, the district court relied on our court's unpublished decision in St. Benedict's Abbey. We agree that it properly analyzed the issue Doe now presents to us.
In St. Benedict's Abbey, drawing from Robinson and Friends University, our court held that for fraudulent concealment to toll a statute of limitations or repose, "the plaintiff must establish affirmative conduct by the defendant, distinct from any conduct supporting a cause of action for damages, that prevented the plaintiff from realizing or bringing a timely cause of action." 2008 WL 3368248, at *8. There, the plaintiff attempted to invoke the fraudulent-concealment doctrine to toll the statute of repose by alleging that the defendant religious institution knew of a priest's previous history of abusive behavior and concealed it, enabling the priest to sexually abuse him. The St. Benedict's Abbey panel concluded that the plaintiff had failed to establish fraudulent concealment because he had not shown that reliance on the defendant's actions had prevented him from discovering his claims before the statute of repose expired. 2008 WL 3368248, at *9. The court recognized that if the defendant had notified each diocese in which the priest attempted to work, then the plaintiff's abuse might have been prevented but emphasized that the claim was indistinguishable from the plaintiff's other claims and did not establish conduct that prevented the plaintiff from filing a timely petition. 2008 WL 3368248, at *9.
Here, the district court gave Doe an opportunity to amend his petition to allege facts showing that the defendants engaged in affirmative acts intended to prevent Doe from raising his claims before the statute of repose expired. But Doe merely added facts about the alleged misconduct in Hays before Meis was transferred to Good Shepherd Church, *770 showing the defendants' knowledge of Meis' history of abuse. This claim is identical to Doe's underlying claims. Doe has not alleged facts establishing the defendants took *16 any affirmative actions designed to prevent Doe from filing his suit in a timely fashion.
Our case is not a close parallel to Robinson. There, the defendant intentionally deceived the plaintiff into not filing a malpractice suit by lying about the source of plaintiff's pain and continuing to conceal the existence of the surgical sponges. In this case, Doe has not alleged what actions, distinct from those supporting his claims for damages, the defendants took to prevent him from discovering his abuse before the statute of repose expired.
Doe also argues that the defendants' fraudulent misrepresentations continued through 2013 when the Archdiocese of Kansas City, through the Archbishop, told him that the abuse was his fault and that his claims lacked credibility. First, nothing in the petition alleges that he was ever told the abuse was his fault, even if other alleged victims were allegedly blamed for their abuse. Second, and more importantly, these events happened long after the statute of repose expired in 1980, so they have no bearing on his claim that the doctrine of fraudulent concealment should toll the statute of repose.
Kansas law also recognizes that fraudulent concealment by silence can toll a statute of repose if the parties have a fiduciary or confidential relationship and the defendant's silence prevents the plaintiff from discovering his or her cause of action. See Friends University , 227 Kan. at 564, 608 P.2d 936 (noting fraudulent concealment to toll a time limitation requires affirmative conduct, unless the parties have a fiduciary or confidential relationship). A fiduciary relationship exists where there has been a special confidence bestowed on one who, in fairness and good conscience, is bound to act in good faith and with due regard for the interests of the other. Dana v. Heartland Management Co. , 48 Kan.App.2d 1048, Syl. ¶ 9, 301 P.3d 772 (2013).
Kansas courts have not considered whether a fiduciary relationship exists between an alleged abuse victim and a religious hierarchy (the Archdiocese and Capuchin Provinces and their agents). But in an unpublished case, the Kansas Supreme Court did not find a fiduciary relationship based solely on the spiritual nature of the relationship between a pastor and a parishioner when the pastor *17 disclosed confidential information learned during counseling sessions. Horosko v. Jones , No. 91375, 2004 WL 2926665, at *1-2 (Kan. 2004) (unpublished opinion).
Out-of-state court decisions disagree whether a fiduciary relationship exists in such circumstances. Generally, the more particularized the details of the relationship, the more likely the court will find a fiduciary relationship. See, e.g., Martinelli v. Bridgeport Roman Catholic Diocesan Corp. , 196 F.3d 409, 429-30 (2d Cir. 1999) (applying Connecticut law and finding sufficient evidence for jury to conclude that plaintiff had fiduciary relationship with diocese when plaintiff attended diocesan school and diocese knew that priest served as plaintiff's spiritual advisor and mentor in boy's youth group); Doe v. Hartz , 52 F.Supp.2d 1027, 1064 (N.D. Iowa 1999) (granting motion to dismiss where parishioner failed to allege basis for diocese's fiduciary duty because parishioner had not had any contact with diocese before priest's misconduct); Fortin v. The Roman Catholic Bishop of Portland , 871 A.2d 1208, 1219-20 (Me. 2005) (discussing plaintiff's assertion of particularized involvement with diocese in activities in church and parochial school as well as diocese's knowledge of parents' illness that limited parental involvement supported finding of fiduciary relationship); Mars v. Diocese of Rochester , 196 Misc.2d 349, 351-52, 763 N.Y.S.2d 885 (2003) (concluding no fiduciary relationship between diocese and plaintiffs merely because the diocese had knowledge of priest's prior history of abuse and concealed that knowledge from plaintiffs by transferring the priest from parish to parish).
We conclude that Doe's allegations did not establish a fiduciary or confidential relationship with the defendants. In his amended petition, Doe alleged he was a parishioner of *771 the Archdiocese of Kansas City. He alleged that the Capuchin Province was responsible for transferring Meis to the Good Shepherd Church. He also claimed that he was raised in a devoutly Roman Catholic family, was baptized, regularly celebrated weekly mass, served as an altar boy, and received sacraments. He asserted that through these activities, he developed great admiration, trust, reverence, and respect for the Roman Catholic Church and its agents. If these acts were sufficient to establish a fiduciary relationship, most priest or *18 pastor relationships with parishioners would qualify. Doe has not alleged sufficient facts to establish a unique, special relationship with the Archdiocese or the Capuchin Provinces. See, e.g. , Doe v. Norwich Roman Catholic Diocesan Corp. , 268 F.Supp.2d 139, 149-50 (D. Conn. 2003) (noting fiduciary relationships with dioceses are only found in unique circumstances and diocese's status as religious organization governing Roman Catholic churches within its jurisdiction did not create fiduciary duty to the plaintiff); Smith v. O'Connell , 997 F.Supp. 226, 239-40 (D.R.I. 1998) (declining to infer fiduciary relationship between plaintiffs and diocese based on plaintiffs' affiliation with parish churches). Because Doe cannot establish a fiduciary or confidential relationship with the defendants, he cannot establish fraudulent concealment by silence to toll the statute of repose.
Doe's final tolling argument is fraud automatically tolls the statute of repose in K.S.A. 60-515(a), relying primarily on Jennings v. Jennings , 211 Kan. 515, 507 P.2d 241 (1973). The defendants assert that Jennings is no longer good law or is inapplicable because it interprets a different statute entirely, K.S.A. 60-513, which provides the time limitations to file certain causes of action that arose when the plaintiff was an adult.
In our view, defendants have the better argument here. Jennings addressed a potential conflict between a 10-year statute of repose that didn't expressly apply to fraud claims and a 2-year statute of limitations for fraud claims that provided that " 'the cause of action shall not be deemed to have accrued until the fraud is discovered.' " Jennings , 211 Kan. at 526, 507 P.2d 241. Both provisions were in the same statute, K.S.A. 60-513. The Jennings court recognized a potential conflict-if the 10-year statute of repose were applied to fraud claims, an action might be barred even though the fraud wasn't discovered within the 10-year period. The court simply interpreted these provisions so that they wouldn't be in conflict, concluding that the 10-year statute of repose then found in K.S.A. 60-513 didn't apply to fraud claims. 211 Kan. at 527, 507 P.2d 241.
Our situation is much different because of the clarity found in K.S.A. 60-515(a). It says that "no action" covered by that statute *19 "shall be commenced ... more than eight years after the time of the act giving rise to the cause of action." We see no conflicting provisions that need to be harmonized, as the court found in Jennings. Doe's action is covered by K.S.A. 60-515 and the 8-year statute of repose found there. "[N]o action" means "no action," not "no action except for ones based in fraud."
III. The Defendants Are Not Equitably Estopped from Raising the Statute of Repose as a Defense.
Doe also asserts that the defendants should be equitably estopped-not allowed as a matter of fairness-from asserting defenses based on the statute of limitations or statute of repose because the defendants had defrauded and deceived him. In our view, applying equitable estoppel to the 8-year statute of repose found in K.S.A. 60-515(a) would run contrary to the clear language of that statute.
Before discussing that further, let's define the term. Equitable estoppel can arise when a party induces a second party to believe certain facts existed and the second party reasonably relies and acts upon that belief. Then, if the second party would be prejudiced if the inducing party were permitted later to deny the existence of those facts, equitable estoppel may be applied to foreclose that denial. Rockers v. Kansas Turnpike Authority , 268 Kan. 110, 116, 991 P.2d 889 (1999). Additionally, for equitable estoppel to prevent a defendant from relying on the statute of limitations or statute of repose as a defense, the defendant must generally *772 have taken some action or acted in such a way that caused or induced the plaintiff not to file suit within the statute-of-limitations period. See, e.g., Rex v. Warner, 183 Kan. 763, 771-72, 332 P.2d 572 (1958) ; Dunn v. Dunn , 47 Kan.App. 2d 619, 639, 281 P.3d 540 (2012) ; Robinson, 23 Kan.App.2d at 832, 936 P.2d 784 ; Coffey v. Stephens, 3 Kan.App.2d 596, 599, 599 P.2d 310 (1979).
In our view, the "[n]o action" language in K.S.A. 60-515(a) must be taken to mean what it says-the court-made remedy of estoppel can't be grafted onto it. This conclusion has some support in our caselaw.
*20 We rely in part on Judge David Knudson's dissenting opinion in 1997 in the Robinson case. He concluded "that the doctrine of equitable estoppel, a judge-made remedy, is inconsistent with the entire concept of a statute of repose." 23 Kan.App.2d at 835, 936 P.2d 784 (Knudson, J., dissenting). He also argued that the statutory language at issue in Robinson ("[I]n no event shall such an action be commenced more than four years beyond the time of the act giving rise to the cause of the action.") was so clear that estoppel concepts could not be grafted onto it. 23 Kan.App.2d at 834, 936 P.2d 784 (Knudson, J., dissenting).
While Judge Knudson's views did not carry the day in Robinson in 1997, recent panels of this court have drawn on his dissent to question whether equitable estoppel can apply to bar the application of a statute of repose when the statutory language seems clear. In Dunn , our court characterized whether equitable estoppel tolls a statute of repose as a "debatable issue in Kansas" but declined to consider the issue further because the plaintiff had not properly pled equitable estoppel. 47 Kan.App.2d at 642, 281 P.3d 540 (citing the dissent in Robinson ). Then, in Dixon v. Klenda, Mitchell, Austerman & Zuercher, L.L.C. , No. 108,559, 2013 WL 3331029, at *5 (Kan. App. 2013) (unpublished opinion), our court held that Robinson was legally incorrect in applying equitable estoppel to bar a statute of repose because it "nullifie[d] a plainly worded statute [ K.S.A. 60-513(b) ]." The Dixon court reasoned that had the legislature wished to allow equitable estoppel to prevent the application of the statute of repose, it could have used such language in the statute, and concluded that "the legislature has adopted a policy that after 10 years has passed, then any cause of action that was created before that time has expired." 2013 WL 3331029, at *5.
At least when considering the clear language of K.S.A. 60-515(a), we agree. The statute provides that "no such action shall be commenced" after 8 years after the defendant's act giving rise. That is clear legislative intent that any cause of action expires after 8 years; we will not apply equitable remedies not found in the statutory language to get around the statute's directive.
*21 IV. Doe Has Not Demonstrated Reversible Error in the District Court's Decision to Dismiss All, Rather than Just Some, of Doe's Claims.
Doe's final claim is that the district court shouldn't have dismissed his entire case because the defendants' motions challenged only claims based on actions that occurred in 1972. He argues that he had brought suit for fraud, constructive fraud, breach of fiduciary duty, and outrage based on the defendants' conduct and actions in 2013, claims that were not addressed by the defendants or by the district court. The defendants argue that Doe failed to raise this issue before the district court.
Doe never argued before the district court that he was bringing claims against the defendants for actions that took place in 2013. Even on appeal, when asserting this argument, Doe has not provided adequate explanation or briefing to support his argument. His brief on this issue consists of a single paragraph, with no citation to his pleadings, no citation to caselaw, and only one citation to oral argument before the district court. Even in the oral-argument statements cited, Doe's attorney never claimed Doe was bringing a separate cause of action based on 2013 events and actions; he merely claimed that the concealment included 2013 actions. We have already explained why that doesn't matter legally here (the cause of action had already been barred by the statute of repose). In sum, Doe neither argued to the district court that he was making claims for *773 actions that took place in 2013 nor explained in his appellate brief why he should be allowed to do so for the first time on appeal. See Supreme Court Rule 6.02(a)(5) (2017 Kan. S. Ct. R. 34); State v. Godfrey , 301 Kan. 1041, Syl., 350 P.3d 1068 (2015) (holding that failure to comply with Rule 6.02 [a][5], which requires explanation of why an issue may first be considered on appeal, waives that issue); State v. Williams , 298 Kan. 1075, 1083, 319 P.3d 528 (2014) (holding that a litigant who fails to adequately brief an issue is deemed to have abandoned the issue). Doe has shown no error in the district court's decision to grant the defendants' motion to dismiss as to all of the plaintiff's claims.
The district court's judgment is affirmed.